UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

TERRY J. MORGAN,                        )
                                        )
        Petitioner,                     )
                                        )
v.                                      )   No. 1:08-cv-772-SEB-DML
                                        )
SUPERINTENDENT, Miami Correctional      )
 Facility,                              )
                                        )
        Respondent.                     )

**Entry Discussing Petition for Writ of Habeas Corpus**

      A federal court may issue a writ of habeas corpus on behalf of a state prisoner only if it finds the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In this case, Terry Morgan ("Morgan") has failed to establish his entitlement to relief under this standard. Accordingly, his petition for a writ of habeas corpus must be **denied.** This conclusion rests on the following facts and circumstances:

      1.    Morgan was convicted in an Indiana state court of armed robbery. His conviction was affirmed on appeal in *Morgan v. State,* No.84A05-0409-CR-526 (Ind.Ct.App. May 31, 2005).  As stated by the Indiana Court of Appeals on direct appeal, the facts and procedural history are as follows:

> On February 20, 2004, Denise Powers was working as a cashier at the Labor Temple, which is a restaurant and gaming room located in Terre Haute. At approximately 10:00 a.m., a man approached Powers and ordered her to give him the money she kept in her apron pockets. The man then hit Powers and told her that he had a gun. After Powers gave the man the money, he hit her again and fled.
>
> Outside of the Labor Temple, James Webster observed a black male running out of the building and holding something in his hands. Webster saw the man get into the passenger door of a van and leave the scene. William Boucher, who was driving down the street just outside of the Labor Temple, also witnessed the man run out into the street. The man almost ran into Boucher's car, and he stopped and looked at Boucher through his windshield before getting into the van. Boucher wrote down the van's license plate number before it drove off.

When police interviewed Powers, she described her assailant as a short, stocky, black male. She explained that he was wearing a hood over his head and that his face was partially covered by a nylon mask. Webster described the man as being a stocky, black male who was wearing a tan jacket and dark colored pants. Webster also saw that the man had what appeared to be a nylon scarf around his neck. Boucher described the man as being black and wearing oversized blue jeans and a light-colored sweatshirt. Boucher further stated that the man had a black nylon stocking partially covering his face. And he saw that the man was holding a fistful of money.

Using the license plate number that Boucher had written down, police determined that the getaway van belonged to Kevin Owens. And police found a van matching the witnesses' description at Owens' residence. An officer approached Owens when he exited his house. In the meantime, another officer had escorted Boucher to Owens' residence in an attempt to identify the assailant. Boucher advised the officers that Owens was not the man he saw running out of the Labor Temple. But Owens told the officer that Morgan was inside his house. When officers tried to talk to Morgan, he was uncooperative. But he eventually exited Owens' house to talk with the officers.

While Morgan was standing outside, Boucher identified him as the man he saw running out of the Labor Temple. An officer also escorted Powers to Owens' residence, and she identified Morgan as her assailant, although she was only "seventy-five percent" certain of his identity. Owens subsequently told police that he had picked Morgan up in his van that morning before arriving at Owens' residence. Owens stated that he saw money in Morgan's hand when he first picked him up, and that Morgan later gave him $150 and asked him to buy him some crack. When police searched Owens' van, they found a gray, hooded sweatshirt and a black nylon stocking.

*Morgan,* at pp. 2-4 (citations to record omitted).

2.     Contending that his conviction is constitutionally infirm, Morgan now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). Morgan's two claims are that (1) his due process rights and his right to effective assistance of counsel at trial were violated by the State's nondisclosure and destruction of evidence, and (2) he was denied the effective assistance of counsel at trial and in his direct appeal in relation to the State's failure to disclose certain evidence.

3.     Under provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only "if, as relevant here, a state court unreasonably applies clearly established federal law, meaning that it identifies the appropriate standard, but unreasonably applies it to the facts." *Curtis v. Montgomery,* 2009 WL 37156, *2 (7th Cir. 2009) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)).

4. In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407. To be considered "unreasonable," a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Goodman v. Bertrand,* 467 F.3d 1022, 1028 (7th Cir. 2006). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

5. In addition to the AEDPA and substantive standard reviewed above, the court must note that "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000).

    a. Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied,* 508 U.S. 962 (1993).

    b. When procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.,* the errors worked to the petitioner's "*actual* and substantial disadvantage,"; or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.,* a claim of actual innocence)." *Conner v. McBride,* 375 F.3d 643, 648 (7th Cir. 2004) (internal citations omitted); *see also Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002), *cert. denied,* 537 U.S. 1214 (2003).

6. Morgan's first claim is that his due process rights and his right to the effective assistance of counsel at trial were violated by the State's nondisclosure and destruction of evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

    a. On direct appeal, Morgan claimed that "the State's failure to disclose the existence of the hair was a discovery violation and that the trial court's denial of his motion to continue was an abuse of discretion." *Morgan,* at p. 4. This contention was not included in Morgan's petition to transfer to the Indiana Supreme Court. The only issue Morgan raised to the Indiana Supreme Court was whether "a defendant does not have the right to a continuance when the State discloses, for the first time at trial, the existence of potentially useful evidence, lost while in the custody of the State." This was an issue about trial management (whether a continuance was compelled under certain circumstances), not a *Brady* claim.

    b. Morgan's failure to include a *Brady* claim in his petition to transfer to the Indiana Supreme Court constitutes his procedural default as to this claim. He has not shown either cause for and prejudice from the court's failure to reach the merits of this claim or that the court's failure to do so would result in a fundamental miscarriage of justice.

   c. Even if the court reached a different conclusion with respect to the question of procedural default, Morgan would not prevail as to this claim. See *Garth v. Davis,* 470 F.3d 702 (7th Cir. 2006); *Timberlake v. Davis,* 409 F.3d 819, 821 (7th Cir. 2004) (federal habeas court examined state court's alternative ruling on the merits after determining that state's finding of procedural default was not an "independent and adequate state ground" that blocked federal collateral review). The Indiana Court of Appeals' discussion of the merits was not an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. To establish a *Brady* violation, a defendant must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material to an issue at trial. *United States v. Walton,* 217 F.3d 443, 450 (7th Cir. 2000). The materiality element of Brady does not require a demonstration that "disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal" but only that there is a "reasonable probability" of a different result. *Kyles v. Whitley,* 514 U.S. 419, 434 (1995). Indeed, current Supreme Court authority establishes that even the destruction of potentially exculpatory evidence does not violate the defendant's constitutional rights unless the destroying officials acted in bad faith by failing to preserve the evidence. See *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988). Whether bad faith on the part of the police is present turns on the "police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.,* at 56 n.1. In *Morgan*, the Indiana Court of Appeals explained that no testing had been conducted on the hair before it was lost, and therefore there was no way to determine whether the hair was exculpatory or incriminating. The trial court explained that because the hair was lost, there was no reason to grant the motion for continuance. "[O]n appeal, Morgan does not allege bad faith on the part of the State. As such, he cannot show that he was denied his right to due process." *Morgan,* at pp. 5-6 (citation omitted).

  7. Morgan's second claim is that his trial and appellate counsel were ineffective in relation to his *Brady* claim involving the lost hair. Morgan filed a petition for post-conviction relief, which was amended on June 8, 2007. Morgan then filed a motion to modify his sentence and to withdraw his post-conviction petition with prejudice. On August 17, 2007, the post-conviction court denied Morgan's motion to modify his sentence, but granted his motion to withdraw his petition for post-conviction relief with prejudice. Morgan filed a motion for reconsideration, which was denied on September 11, 2007. Morgan filed a notice of appeal on September 21, 2007, claiming that, "the post conviction court abused it's discretion because said motion should have been granted in full or dismissed for lack of indicia." The State's motion to dismiss Morgan's appeal was granted because Morgan did not file a timely notice of appeal. As to this second habeas claim, therefore, Morgan did not exhaust his available remedies in the Indiana courts, those remedies are no longer available to him, he has committed procedural default with respect to this claim, and has not shown the existence of circumstances permitting this court to reach the merits of it. If a petitioner neglects to properly present a claim to the state's highest court, the claim is procedurally defaulted and barred from district court consideration. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (7th Cir. 1999); *Moffat v. Boyles,* 288 F.3d 978, 982 (7th Cir. 2002); *Wilson v. Briley,* 243 F.3d 325, 327 (7th Cir. 2001). These claims of ineffective assistance of counsel were not properly presented to Indiana's highest court and are now procedurally defaulted.

8.      Morgan's conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002)(citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").[1] This court has carefully reviewed the state record in light of Morgan's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. Morgan's petition for a writ of habeas corpus is therefore **denied.** No additional proceedings are warranted. Morgan's motion to appoint counsel and request for an evidentiary hearing (dkt 26) is therefore **denied**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  02/09/2009

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[1] Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 468 (1938)).